Case No. 16-0873, Forest Preserve v. Joe Foust I'm Bob Baker for the Forest Preserve District of Cook County. Joseph Turk on behalf of Joe Foust, the Plano faculty in 0873. And as to the appellant, how much time do you want to reserve for rebuttal? Five minutes. Okay. All right. Let's proceed. May it please the Court, Counsel. I'd like to focus the Court, or urge the Court to focus on two things that I think will be helpful in analyzing both aspects of the appeals that are up this morning. The first is the purpose and the mission of the Forest Preserve District of Cook County and the character of the Forest Preserve's property. Forest Preserve owns approximately 70,000 acres of property that's comprised of forests, rivers, prairies, meadows, lakes, lagoons. That property is expressly set aside by statute for the education, pleasure, and recreation of the public. Do you know what percentage of all of the property is set forth for recreational purposes? I know that in the Belton decision, there's a reference to 10% of the property being set aside for recreational purposes. And in the pamphlet that is included in the record on appeal, which is a graphic depiction of our property, there's a reference to approximately 80% of our property being kept in essentially its natural state. And what I would like to point out to the Court with respect to that is that notion of certain of our property being set aside for recreational purposes, that's with respect to active recreational facilities. For instance, trails, picnic groves, boat docks, things of that sort. Most of the remainder of our property, as it remains in its natural state, is still recreational in nature. Hiking is allowed virtually anywhere in the Forest Preserve District. I know in plaintiff's response, in one of their briefs, they indicated that off- If your argument is that everything is basically recreational, okay, that means that you would be totally immune from anything. Well, Your Honor- Is that the intent of the legislature, to make you totally immune? Your Honor, at this point, I think what you're talking about is Section 3-106 of the Tort Immunity Act, which does not provide absolute immunity. It provides only immunity as to negligence claims with respect to claims that are based on conditions of recreational property. But having said that, Judge, this case does not involve a tree, for instance, in the middle of some remote forest. It involves a tree a few feet from a bike trail that is in an area- When you say a few feet, how many feet was it? Seven and a half feet, Your Honor. All right, so a few is two, so that's a little bit more than two. Seven and a half. Seven and a half is more than two. All right. I think if you take a look at the pamphlet that's included in the record on appeal, it's page 44 of the record, as well as the photographs that are on pages 62, 63, and 64, you'll get a graphic idea of what forest preserve property is like. It's an enormous system of trails that run through forests, along rivers. The decedent in this case was riding on one of those trails. The forest preserve is more like a national park or a state park, a wilderness area, than it is like a park district park or a playground. And so I think it's important that you bear in mind the purpose, statutory mission, and the character of forest preserve property. And the second thing that I think the Court should bear in mind is what is the purpose of the Tort Immunity Act, which is to encourage the development of recreational areas like the Forest Preserve District. I have a question regarding the tree itself. Okay. So the tree itself was marked off with a red X or a cross or whatever, right? What was the purpose of it? The tree was marked for eventual removal. It was marked as part. Why was it going to be removed? It was going to be removed for two reasons. One, the architecture of that tree. That tree was growing up and over the trail. And the second reason is that tree species was a low-value tree species within the Forest Preserve. The tree was not marked because it was diseased, defective, dead, anything like that. The pattern of growth and the tree species were the reasons that it was marked for removal. And it was marked for removal as part of a tree inspection process that the Forest Preserve has that was specifically designed to address the infestation of emerald ash borer insects. This tree was not an ash tree, so it wasn't being removed as an ash tree. Well, if it was marked for removal, how come it wasn't removed? The contract, the marking had occurred a couple weeks prior to the accident, and the bid for contract tree removal process had not completed yet. So, again, I want to urge the Court to focus on the character of our property, the purpose of the Tort Immunity Act, which provides immunity in certain situations. And this case presents two such situations. The first is injuries that are caused by conditions of riding trails, and that's the immunity provided in Section 3-107B. There's no question that the trail in this case was a riding trail under that provision of the Tort Immunity Act. The Brown case, the McElroy case, and the Moore case have all had that Forest Preserve bike trails, our riding trails, within the statute. And the Brown case in particular found immunity applicable to a steel- But all of those cases have to do with an obstruction that is already in the ground, do they not? None of them are a tree that falls on somebody's head. That's true. None of those three cases involved a tree. However, the Brown case involved a steel guardrail alongside the trail, and the court in Brown found 3-107B applicable to immunize the Forest Preserve from- Well, and that's because it was already on the ground. It was on the ground, but not on the trail. It was alongside the trail, and that- was alongside the trail. But it wasn't on the trail. It wasn't on the trail. It hung over the trail. And the branch fell and was on its way down to the trail when the accident happened. I would submit to the Court that a useful way to consider the application of 3-107B here is a definitional analysis. The courts in Brown, Mauer, and McAvoy all looked at what is a riding trail, and they looked at the dictionary definition of a trail, which is a marked path through a forest or mountainous region. Well, we don't have mountains here in the Midwest, but we have forests, and so I would suggest to you- But this trail wasn't marked. Oh, yes. This was a- Wasn't this trail sort of off the beaten path in terms of what people were using? No, that's not the case at all, Your Honor. And if you take a look at this-at the pamphlet that's at page 44, you'll see that this is part-this is the north branch paved bike trail through the forest preserve. And the photographs that are in the record as well depict the tree. This is page 62 from the record. This is the tree, and this is the path. This tree is right alongside the path. This is a paved path that runs for approximately 20 miles through the forest preserve. So it is very much a marked, established path. But this is a trail, as you have indicated. It's designated as a trail. Don't you have a responsibility to keep it unhampered and safe for individuals that want to use this trail? Of course we do, and that is one of the reasons why the tree removal contract process that I talked about a moment ago was well underway. However, as I mentioned to you, the Tort Immunity Act is designed to encourage public entities like the forest preserve to have and develop recreation facilities like this. And if you consider what is a trail through a forest preserve, of course there are trees all along that trail. What is a condition of that trail? Our Supreme Court in the Moore case, it's a 3-106 case, but the Supreme Court of Moore acknowledged that the word condition is not defined in the Tort Immunity Act. And so they asked themselves, they set out the relevant inquiry. Was the injury caused by a condition of the property itself? Here, I don't think there's any question that the injury was caused by the property itself. It's caused by a fallen tree limb. And when you look at the dictionary definition of the word condition, it's the state of something. It's its circumstance, its surroundings, its environment. This was a tree seven feet, seven and a half feet from the edge of the trail. You can see it depicted in this photograph. It's right on the edge of the trail. The plaintiff alleges in their complaint that it's alongside in close proximity to the trail. It's undisputed in this case that trailside trees have an effect on users of the trail. Plaintiff resists that notion, and the plaintiff has artfully not pleaded that the tree was a condition of the trail. Well, let me ask you a question here. If it's the condition of the trail, didn't the circuit court find that when you were arguing Brown that that was a man-made obstruction as opposed to a natural obstruction, and therefore Brown didn't apply? But now you're arguing that Brown does apply. I am arguing Brown does apply, and you are correct in how the circuit court looked at Brown and declined to apply Brown. But if you read the Brown decision, what the Brown decision's focus was on was whether tort immunity under 3-107B was confined to natural conditions, to natural circumstances. It was understood by the Brown court that, of course, the immunity in 3-107B applies to natural conditions. The question was, do we extend this immunity to man-made conditions? And the court in Brown found that the immunity did extend to man-made conditions. I think where the circuit court went wrong is in viewing Brown as a finding that the immunity applies only to man-made conditions. You know, your tank is running up, and you want some time for rebuttal. I do. I would like time for rebuttal. So I would just like to leave the court with this. The tree clearly affected the use of the trail. While plaintiffs may resist that, the tree is only relevant here because it did affect the decedent's use of the trail. If a trailside tree could not affect the use of the trail, this accident wouldn't have happened. The lawsuit wouldn't be filed. We wouldn't be here. And I'd like to urge the court to take a look at what the circuit court said at that hearing on plaintiffs' motion to reconsider. The circuit court said this tree abetted the trail, it hung over the trail, and it became part of the trail. That's at page 280 in the record. For all these reasons, I think when you consider the character of forest-preserved property and the purpose of the Tort Immunity Act, this immunity in 3-107B clearly does apply. The trailside tree is a condition of the trail. And I'd ask you to render a decision in our favor on that point. Thank you. Good morning. May it please the court, counsel. The district defined the scope and parameters of the trail when it designated it as the North Branch Pave Trail. Merlin Webster's dictionary defines parameters as a rule or limit that defines what something is. A condition of means some aspect or condition or circumstance of the trail. And the trail is defined as the paved trail. So the trail ends where the pavement ends. And so does the immunity. There's a strict construction policy as it affects derogation of kind of laws and statutes such as immunities. And in looking at it in that light, the tree cannot be considered as part of the trail. And I'm asking this following that analogy, if Ms. Glenn was not riding a bike but actually walking through the forest and was off the path, would the immunity apply here then? I don't believe so. Because they claim that they have immunity as to the entire recreational area. Well, they've claimed that the whole area is recreational. And the courts have said you can't just blanketly give immunity to an entire area per se. I mean, isn't that something that we have to determine here? What area is recreational? Whether these circumstances were recreational. In terms of the area where the tree is, that would be, I think, something we would consider in the case of 0874 as to whether it was a recreational use area. But as far as the condition of the trail itself under 3107, or 107B actually, you can't just arbitrarily set a distance from the edge of the trail and say that area is immune because you would be arbitrarily doing that. And the Branson case basically said courts shouldn't do that and it wouldn't be within the intention of the legislature to do that. All the cases that are out there are cases where the impediment is already on the ground. Well, that's true, but also most of the cases, almost all of them, deal with some defect in the trail itself. If you look at Brown. A defect that's already there. Correct. The slope and the curvature. You look at McCarran, that was part of the trail, somebody coming across where the trail went through a bridge and they came out of the bridge, the trail was washed out. Mull is a case where there was a rut in the trail itself. This is not the case here. The defendant, as you mentioned when he got up as well as in his application, stated that the trail is defined as a marked path. A path is something that's underfoot. It's not to the side. It's not above you. It's right in front of you and underneath you as you proceed. And the path in this case was the North Branch Pave Trail. So then, counsel, you're saying that if Seton had been walking five feet to the left of the trail and two feet away from that particular tree and the branch fell and caused her demise at that time, you're saying that there would be no immunity there? Based on the wording of the statute and the proposition that these are to be strictly construed, that's correct. And if the legislature wanted to immunize 10 feet to the side of the trail, 20 feet to the side of the trail, 20 yards, 100 yards, they could easily do so. It takes a very small either pronouncement in the Act Trail Act itself or even if it was amended, it could have been done that way. Isn't your better argument an argument that all the cases out there, the impediment is already on the trail and here this is a tree that's designated for removal and it falls on a person. There's no cases out there, so this is a case of person pressure. Correct. I agree with that, but it's not the only argument. I suppose it could be. It depends on your perspective, I guess, Judge. Nothing I wanted to say in closing is that the purpose or mission of the district would not be thwarted if immunity was not applied in this case. They'd still be able to acquire lands, take care of lands, and so on. The purpose of a tort immunity is not to blanketly immunize the district from all aspects of all of its activities and all of its property. Otherwise, 3-102 would be totally eviscerated. The tree was also scheduled for removal based on Mr. McCabe's deposition, who was the supervisor from the district, because it was a potential hazard. So that's something also that needs to be considered, that they should have done that. They should be required to do that because the trail itself and the district defined what the trail was. The tree is not part of the trail. What's the relevance of the fact that it was scheduled to be removed? It shows that the district is making an attempt, and as I indicated in my application and response application, I'll do it neither to try and remedy some of these hazards. It shows under the tort law notice and knowledge of a dangerous condition. Oh, sure. There's no question about that aspect. What about their argument regarding Brown, that the district court got Brown wrong? I don't think they did because the court said that the Brown case was based upon the slope and curvature in the pleadings. The plaintiff pled that it was the slope and curvature that caused the occurrence, which was man-made, and their interpretation of the court's ruling is that that was the basis of the circuit court's reliance on Brown, that that was man-made. I don't think man-made or natural plays a part in it as a condition of the trail. It's not in the act. I'm not arguing that. That's an argument they raised. I know, but I think they're wrong. Why? Because the Brown decision was predicated on the slope and curvature, whether it was man-made or if it was a natural slope and curvature, it would still be a condition of the trail itself. And that's what the act says. It has to be a condition of the trail. Anything else? No. Thank you. Mr. Butler. Briefly, Your Honors, counsel stated that the immunity ends where the trail surface ends. Statute doesn't say that. If the legislature wanted to end the immunity where the trail surface ends, they could have said conditions of trail surface. Instead, they used the word condition. And it's your job, as you stated, Justice Gordon, to interpret what the statute provides. And I would submit to you that a condition of the trail is something that affects the use of the trail. This tree clearly did affect the use. And in the Brown case, counsel has characterized the Brown case as relating solely to the curvature and slope of the trail. That is not the case. If you take a look at the Brown decision, Brown court makes clear that the plaintiff alleged that the steel guardrail alongside the trail caused his injury. And the decision of Brown immunized the Forest Reserve District from all of the allegations in that case. So 3-107B was applied to a condition not on the trail surface but alongside the trail. And that is exactly what we have here. We have a condition alongside the trail and in close proximity to the trail. Those are words from the plaintiff's complaint. If this tree was somehow not relevant to decedent's use of the trail, this accident wouldn't have happened. The fact that the Forest Preserve had notice of the presence of this tree or knowledge of a potential hazardous condition of this tree, that doesn't have anything to do with the application of the immunity. Immunity stems from the interpretation of the words in the immunity statute. Immunities, there can be a duty. And what the immunity statute does is it insulates you from liability from any breach of that duty. And when you consider the character of the Forest Preserve property and our mission to provide recreational facilities allowing for liability for tree falls along a Forest Preserve trail ends up creating at least a chilling effect on our ability to continue to offer facilities like this. We cited a couple of out-of-state jurisdiction cases that recognize that public entities might have to reconsider providing recreational facilities like this if they're going to be subjected to liability for tree fall cases. And I would suggest to you that when you consider the character of our property and the purpose of the Trail Immunity Act and the clear effect that this trailside tree had on use of the trail, the 3-107B should apply. Thank you. Thank you very much. We're going to take this case under advisement. It's a very interesting case. It's a case of first impression. And we want to thank you for the briefs and your arguments. And we'll give you a decision in a very short time. Now we will take a recess as we have to change our panel.